This is called the first case of the afternoon. The first case is 4-15-0026 W.C. Springfield School District No. 186 v. Mark Smith, John Langfeller, Charles Edmonds, and Lydia. Good afternoon. John Langfeller with the Springfield School District 186. This case involves a work-related incident that occurred on October 6, 2010, involving a lumbar sprain, superimposed on a degenerative disc condition, a temporary aggravation with resolve, a claimant reaching MMI as of March 14, 2011, and that any treatment after that date was not causally related to the work event of October 6, 2010. There are three issues currently before the court involving the commission's findings that, one, that the present condition of ill-being was causally related to that October 6, 2010 event, that the finding that the claimant was entitled to TTD benefits from the date of that injury through the date of arbitration of April 16, 2013, and the award of prospective medical after March 14, 2011. Those findings, we feel, are all against the manifest weight of the evidence for the following reasons. As far as the commission, their finding on these three issues relied on the opinion testimony of Dr. Gornat. Over Dr. Harder. If it was just a comparison of one opinion over the other, I wouldn't be standing here arguing. It's basically the medical opinion of Dr. Gornat compared to the weight of the evidence for all the other treating physicians and the medical treatment that Mr. Smith received up to that time. Well, Dr. Gornat didn't pull any punches. He said Dr. Harder's causation opinion was ludicrous, right? I agree with that. Pretty strong opinion. But he did not address, even though he said that, he also said that, well, he was a spinal surgeon and Dr. Harder was just an OCMED doctor. But the commission knew that, right? The commission knew that. Correct. And they also found that Harder's opinion was not persuasive. Well, as far as I think that their reliance on Dr. Gornat's opinion is based on, it's only there wasn't sufficient foundation to show that Dr. Gornat's opinion was reliable. And for the following reasons. Because if you look at the medical records and the medical testimony, the medical evidence and the witness testimony, as of October 25, 2010, Mr. Smith had a 20-pound weight restriction. He was undergoing conservative treatment. He had an MRI that was done in November, given a couple injections by Dr. Gnarlett, and was undergoing conservative treatment. As of that time, he was getting physical therapy. The physical therapy notes show that he was improving. By his own admission, he was improving 20 to 25 percent. He was then on the next visit. Was the claimant able to work without active medical treatment and without exhibiting any pain for the two years leading up to his accident on October 5, 2010? No, he was not for the following reasons. Because as of that time, the school district had a 75-pound weight requirement. And Mr. Smith was a substitute employee, called in as needed. He was not a full-time employee. But it was known from that time that until he was able to, because of the 75-pound weight restriction, he would not be able to return to work. I meant medical restriction. Was he under any medical restrictions in the two years prior to his October 5, 2010 injury? No, he was not. He had prior back treatment, did he not, for bulging discs? Correct. And that was Dr. Narla. And the indication was that his symptoms had resolved, and he was not under any medical treatment for the two years prior to October 5, 2010. He was able to do his job. That is correct. Okay. But that is another reason why Dr. Burnett's opinion isn't based on all the valid facts. Because one of the basis for his opinion was the fact that he was under the assumption that Mr. Smith was working full-time from the time that he was released for that injury all the way up to the time for this injury. And that was one of the basis of his opinion was that, well, he was working full-time leading up to that, so he should feel that that was one of the basis of his opinion that the commission relied upon. But as you got to... Did Burnett opine that the claimant's symptoms subsequent to his accident on October 5, 2010 were, quote, spot on with the MRI showing a disc herniation at L4-5, stenosis at L5-S1, spurring and loss of disc height at L3-4, L4-5, and L5-S1? I believe that that is correct. That was his opinion, but it was based on just the review of the November 2010 MRI. And the accident was October 2010, is that correct? The accident was October. Okay. But there was an MRI that was conducted in 2006 after that original injury, the original work-related injury, that Dr. Burnett did not take a look at. He only looked at the... The only thing that Dr. Burnett looked at was he looked at the EMG, he looked at the MRI that you just referenced, but he did not have the prior MRI in 2006 to have a comparison, whereas that was one of the reasons Dr. Howder formed his opinion. When claimant went to see Dr. Howder, Dr. Howder looked at the prior records from the date of the accident all the way up to the date that he was being seen. So he had the MOHA records, he had the physical therapy records, he had NARLA's records. He had both MRIs. He had the 2006 MRI. You're saying that Dr. Howder was in a superior position to evaluate the medical evidence, and yet that's still within the providence of the commission. They assign weight to the evidence and not us. We can't re-weigh the evidence, you realize that. I agree with that. What I'm pointing out is the fact that what Dr. Howder's opinion was what he relied on. Excuse me. Burnett acknowledged that although the claimant had a preexisting disability, L3-4 and L4-5 and mild stenosis at L5-S1 way back in 2006 and 2007, that he received three or four epidural shots December of 2006, January of 2007. They had excellent benefits and completely resolved his back symptoms, and that the claimant worked without medical restrictions, no medical treatment, and was not in pain for two years prior to October the 5th, 2010, and that he testified immediately following the accident of the claimant's condition deteriorating, and he became symptomatic. And what Dr. Burnett was relying on was the history that was relayed to him by the claimant. He was also, he looked at the MRI that you just, we just discussed. Well, he acknowledged the condition earlier. Is there something wrong with that acknowledgment that there was a preexisting disability? L3-4-5, L4-5, L5-S1. The issue that I see with that is that his opinion is only as valid as the facts that he has, and what he has is he's looking at what he was told by the claimant. He's reviewing that MRI that was seen, but he's not reviewing the prior MRI to see if that MRI, if there was any worsening or acute condition, which he hasn't done. But let me ask you a question. If the guy's non-symptomatic, he's got disc bulges, we know that, and he's got spinal stenosis, but he's non-symptomatic for two years, then he has this event in October 5th, 2010, and becomes symptomatic, and they take an MRI of his back, and as opposed to mild spinal stenosis at L5-S1, the MRI in November reflects severe spinal stenosis, and disc herniation at L4-5, as opposed to merely bulging, why can't the commission rely on his opinion? Well, as far as the severe stenosis, I believe that Dr. Howard, in his examination and comparison of both, indicated that it was severe at that time. Now, as far as, and I understand that when the claimant is saying that he's not symptomatic before, when you look at how he progressed through treatment, with the physical therapy notes that showed he was improving, as they added treatment, added repetition, he was performing everything, good range of motion, little complaints of pain, able to do all that easily, saw Dr. Howard at that time who compared the MRIs, he also did the objective testing to determine whether or not the complaints the claimant was coming to him for were valid. He did, and he enumerated and explained in great detail the tests he performed, why he performed those tests, and what the significance was. And he was the only physician seen by, that claimant saw, that performed those tests to specifically judge the validity of the subjective complaints that Mr. Smith was coming to them for. How do you respond to the position that the commission in this case specifically found the claimant credible regarding his testimony as to the level of pain, the extent of the pain, the period of pain? The commission found him credible, so what are we to do with that? I think that subjective complaints of pain, as far as judging the credibility, I think that I agree with the commission's finding as far as credibility. I'm not arguing that point, but I'm looking at the, as far as the medical evidence, and whether or not the, as far as the medical evidence, in order to judge the complaints and whether or not it's valid, like I said, let me start over. Starting with Dr. Howder, once he got to Dr. Howder, doing the objective tests, and that he didn't feel that the complaints were valid, indicated that that lumbar sprain that he had incurred had resolved at that point, believed he was at MMI for that injury. At that point he went to Dr. Panetta, who also examined him, indicated he was not, he did an EMG January 21st, 2011, indicated that he had some findings of a radiculopathy at that time, but then went and had a discogram on February 7th, 2011, which was negative. At that point, Dr. Panetta stated that, not a surgical candidate, and after that point referred him to Dr. Narla for further medical management. When he saw Dr. Narla, what Dr. Narla said was, reviewed the discogram, negative findings, and then suggested that, one, he could do exercises, heat and pull packs, and he would refill his prescriptions if he wanted to. So as of that time, there was no further treatment recommendations other than the exercises, the heat or pull packs, and refilling the prescriptions if he wanted, as of March 14th, 2011. After that date, there was video evidence on May 6th, 2011, which showed, as of that time, the claimant was under a 20-pound weight restriction, with the complaints of pain that he was voicing to these doctors. Up to that point, then we see the video of May 6th, 2011, in which he is handling 40 pounds of material with relative ease in various situations, going into Menards, lifting 40-pound bags into a shopping cart. And the Commission saw the video, right? That's correct. What was their reaction? As far as from the, their reaction was that, in their finding, as far as the finding that they said was that this was an isolated incident, if I remember correctly, it stated that it came at a time when the claimant wasn't working and wasn't being paid benefits. So as far as, I'm not sure how that excuses somebody that's supposed to have a 20-pound weight restriction to be able to handle 40 pounds with relative ease. Wasn't there a factual dispute about whether the bags weighed 40 pounds? What the plaintiff, or excuse me, what... I mean, an investigator said it was this particular thing, and the petitioner said it was something else, wasn't there? And I think that goes to the weight of the evidence because I think we have provided everyone with a copy of the CD, and I think an objective review, if you look at the first 20 seconds of the May 6th, it will clearly show the bags in question with the coloring, the labeling that claimant is just lifting it with relative ease out of a shopping cart, over the tailgate of his pickup, and back into the pickup. You will also see the claimant at 3.35 of that same through 4.38 of that same video, picking those same bags up, bend over at the waist, and easily shaking them out. And I know that when you're talking about whether or not they found him credible, he did say in response to the emptying of the bag that he was kneeling down and spreading it out with his hand. You will see him doing that, but it's at 4.35 or 4.38, after that minute where he's taking it out and shaking it out. Thank you. Thank you, counsel. We'll have time in the pot. Thank you. I'm Chuck Edmiston. I represent the petitioner, Mark Smith, in this case. Much of my argument has already been made by the court, so I'll try to be brief. All the issues raised here by the employer are manifest weight issues. The commission has ruled in my client's favor on all of those issues, and I think that should be affirmed. It's undisputed the claimant had a prior back injury. It's undisputed he underwent treatment for that prior injury and had complete relief of his pain by epidural injections. He worked heavy work for a period of a couple of years before he suffered this work-related accident and had a sudden onset of pain that persisted thereafter, as is documented by his own testimony, as well as supported by the medical records that are all consistent with his testimony. So the chain of events supports causation. The employer disputes causation primarily upon the opinion of Dr. Howder compared to the opinion of Dr. Gornett. Dr. Howder is an occupational medicine doctor. He describes a rather bizarre and extreme exaggeration of pain that none of the other treating doctors, none of the physical therapists see in this case, and therefore the commission found his observations to be unperceived. Treating doctors noted no inconsistencies at all. My client, as Dr. Gornett pointed out, had an MRI that's objectively confirmed. A reason for the pain complaints he had had an EMG that objectively confirmed. The reason for his radiating pain in his leg. So his treatment, his condition was well documented by the doctor. The video surveillance was not found persuasive by the commission, and I think that was a proper conclusion. It's a brief depiction of my client lifting some bags and lifting a few other things and doing some bending, but it's on a fairly short period of time. The weight of those bags was in dispute. My client testified it couldn't have been what the investigators stated it was because using that substance would have done more harm than good in what he was trying to do. As far as TTD goes, the issue there is whether my client was at MMI. The commission found he was not at MMI because Dr. Gornett was recommending further treatment. Dr. Panetta in the past had done a scan that he had ruled out surgery at that point, but Dr. Gornett wanted to repeat that scan because he felt that my client at that time was on narcotic medication, and for that reason that scan may have been skewed because of that fact. After my client had successfully gotten off the narcotics, he wanted to repeat that evaluation. And again, the medical expenses awarded by the commission were all supported by the evidence, by Dr. Gornett's testimony, so I would just ask that the court affirm the commission's findings in all respects. Thank you. Thank you, counsel. Counsel, you may reply. As a clarification, I'm asking that the commission's findings as to all three issues are against manifest way to the evidence from March 14, 2011 forward. Not just relying on Dr. Howder, relying on physical therapy, Dr. Howder, Dr. Panetta, and Dr. Narla, and all the findings that they presented in addition to the video evidence. One thing I'd like to address the TTD issue because you do have a case where we have video evidence of an individual that's handling that we say that the evidence clearly shows is double what his restrictions are. We will admit that it's 75 pounds is required to return to work for the school district, but at that time the individual that claimed it was a substitute part-time employee. With that, we believe that looking at that video evidence clearly shows that he is an individual capable of at least doing 40 pounds. I'm not saying come back to work for the school district, but he can work in some capacity. His testimony at arbitration was that he didn't, as of the day of the accident, he didn't work, didn't look for work, didn't apply for work. And so under the Sunny Hill case that we had talked about, in that case, that plaintiff is distinguishable from our case because there you have an individual that's just sitting there doing a few odds and ends that are totally consistent with the restrictions. An individual such as Mr. Smith who is handling material that's double his restrictions, I think has to be taken into account. It shows that, one, he can work. He does have, he could return to work with or without restrictions, because that's one of the factors we could consider. Type of work being performed, he's doing heavy lifting up to 40 pounds. The medical testimony, if you take a look at what the physical therapist, Dr. Howder, who says he's at MMI, you have Dr. Anita who says he is in need of no further treatment. Other than medical management. And you have Dr. Narla saying, I will refill your prescription. Did Dr. Anita really say that he didn't need any more treatment? Dr. Anita said that he would not recommend any surgery. It gave him no surgical option and referred him to medical management with Dr. Narla, who then said that exercise, heat, cold packs, I'll refill the prescriptions if you want. Which he didn't do, because Dr. Garnett said, I want you off the pain medication. But no one ever said his symptoms didn't resolve. The medical evidence indicated that he had returned to baseline. I believe that was according to Dr. Howder's report after the second book of the EMG, the discogram and all, and the video. And I think that just based on an individual who can look, just because he did not go back to work with the school district, which required 75 pounds, you have an individual who can lift 40 pounds, based on the facts of this case, I don't think that it simply can't be the law in the state of Illinois, an individual that can lift 40 pounds under the facts of these cases, because they didn't apply for work, didn't go back to work, didn't work anywhere, that they would be entitled to TTP under the facts of this case. Thank you. Thank you, counsel, both for your arguments in this matter. If you take another advisement, this position shall issue.